SUSAN RICHARDSON GORDON *v.* CARNEAL WARFIELD.

1. CHANCERY COURT. *Jurisdiction. Nonresidents. Unliquidated demand.*

The chancery court has jurisdiction of a bill for relief filed against a nonresident of the state, having property here, to redress a wrong, even if the damages suffered by complainant are unliquidated.

2. SAME. *Depositions. Code* 1892, § 1752.

Depositions taken without notice are not receivable in evidence. If the adverse party be nonresident, notice of the taking of depositions should be served on him, as provided by code 1892, § 1752, by filing the notice or interrogatories with the clerk for the time required. This section applies to depositions for use before masters in chancery, to whom the cause has been referred, to state an account between the parties.

FROM the chancery court of Washington county.

HON. A. H. LONGINO, Chancellor.

The facts are sufficiently stated in the opinion.

*Yerger & Percy,* for appellant.

The decree appealed from in this case is a startling illustration of the progressive and innovating spirit of the age, the tendency of which, when carried into our courts, is to disregard established rules of jurisprudence, and to lightly set at naught limitations as to jurisdiction, based on wisdom vindicated by the centuries, and crystallized into precedents as innumerable as the judicial tribunals of civilization. There are four principles which seem to effectually bar recovery by appellee in this proceeding: (1) Where proceedings *in rem* have

been adopted in the chancery court they have been largely, if not entirely, due to statutes; (2) the mere fact of the nonresidence of the debtor, and inability to obtain judgment against him, does not create jurisdiction in a case where it does not otherwise exist; (3) when equity attempts to proceed *in rem*, it does so by a precedent seizure of the property, or in some method equivalent to a seizure; (4) equity has never exercised its remedies for the enforcement of a claim for unliquidated damages arising *ex delicto*.

The decision in the case of *Dollman* v. *Moore*, 70 Miss., 267, does not render untenable any one of our four propositions. While that case overturned what had been regarded as established principles of jurisdiction, yet the broadest construction of that case falls far short of warranting appellee's contention. To apply that case to the one at bar, is to extend it infinitely beyond its reason and proper limits. *Zachery* v. *Bowers*, 1 Smed. & M., 584, s. c. 3 Smed. & M., 641; *Comstock* v. *Rayford*, 1 Smed. & M., 423; *Gasget* v. *Scott*, 9 Yer. (Tenn.), 244; Pomeroy's Eq. Jur., sec. 1317; Beach's Eq. Jur., sec. 6, *et seq.; Arndt* v. *Griggs*, 134 U. S., 316; *Brennan* v. *Burke*, 6 Rich., 200; *Farrar* v. *Haselden*, 9 Rich., 331; *Banks* v. *Paine*, 13 R. I., 592; *Steene* v. *Hoagland*, 39 Ill., 264; *Cudabac* v. *Strong*, 67 Miss., 705; *Hart* v. *Samson*, 110 U. S., 151; Story's Eq. Jur., 794 and 794*a.*

The decree appealed from is erroneous, in that notice was not given by the master to appellant of the taking of testimony as to the damages claimed. Nonresidence of appellant did not exempt the master from giving the notice of which the nature of the case admitted. Certainly he should have filed the notice in the papers. § 1752, code 1892. Appellee probably went on the idea that not being governed by statute he enjoyed peculiar rights, and should not be hampered by rules of practice.

*Frank E. Larkin,* for appellee.

The case made by appellee and confessed by appellant, shows

an injury done the former by the latter, for which no remedy is given, unless a court of equity will give life and force to the maxim, "Wherever a legal right has been infringed, a remedy will be given." Equity jurisprudence is founded on this maxim, and, wherever a right recognized by the municipal law has been infringed, the extent of jurisdiction of a court of equity is determined by this maxim, the only force of which is its supposed universal application. Pomeroy's Eq. Jur., vol. 1, sec. 423 *et seq.* This maxim can have no force unless it be applied to confer power on courts of equity, in cases where rights recognized by the municipal law have been infringed, to grant appropriate relief.

Appellee contends that never yet has a court of equity refused to grant relief where a municipal right has been infringed. In this case, a legal right of complainant has been infringed; an injury has been done him by defendant, for which a circuit court, if it had jurisdiction of his person, would undoubtedly give compensatory damages. But defendant is beyond the reach of process of that court. The statutory methods provided for a surer collection of debts due by nonresident debtors and the recovery of damages for breaches of contracts against nonresidents by attachments at law and in chancery, are denied complainant, for the reason that the damages suffered by him are unliquidated, and the statutes fail to provide a remedy in this class of cases. But, independent of statutory modes for obtaining relief, a court of equity, by force of the maxim alluded to, has inherent power and jurisdiction to afford the relief prayed for by complainant.

In *Zecharie* v. *Bowers*, 1 Smed. & M., 589; s.c. 3 Smed. & M., 641, complainants showed that defendant was a nonresident of the state; that he was indebted to complainants; that he owned lands in this state, and prayed to have the lands sold to discharge the debt. A decree *pro confesso* was taken, and, the cause being set down for final hearing, the bill was dismissed. On appeal, the decree of the lower court was affirmed, and the

ground for affirmance was the failure of the complainant to proceed in the manner pointed out by the statute for an attachment in chancery.   Many years afterwards, by the case of *Dollman* v. *Moore*, 70 Miss., 267, the case of *Zecharie* v. *Bowers* was overruled, and this court says the decree should have been for the complainants.   The reason given for the decision is the inherent power of a court of equity to grant relief where rights recognized by the municipal law have been infringed and the law provides no remedy.   The cause was brought to collect a debt, and the justice who delivered the opinion of the court, in vindication of the boast, "*Ubi jus, ibi remedium*," says: "It would be a surprising condition of affairs if a nonresident debtor, owning property in this state, to creditors resident here, could never have been compelled to pay his debts by the courts of this state, exercising their common law jurisdiction.   The authorities are numerous that, under such circumstance, resort may be had to equity in the first instance."

*Mayes & Harris*, on the same side.

The case of *Dollman* v. *Moore*, 70 Miss., 267, settles the rule of practice in this state, that independent of the statutory attachment in chancery against nonresidents, there is a jurisdiction in courts of equity to afford relief to one who is otherwise without remedy at law, and that case would be conclusive of the one at bar, if it were not for the fact that in the case at bar the demand of the complainant is for unliquidated damages, and, therefore, the question is presented whether the principle of *Dollman* v. *Moore* will be extended to a chancery attachment where the demand asserted is for unliquidated damages. Our contention is that the same principle includes this case.

We refer the court on this question to the various cases cited in *Dollman* v. *Moore* on page 275.   None of them were cases where recovery was based on unliquidated damages, but the reasoning of the cases all tends to show that their principle would be applicable to a case of that sort if the appeal to chan-

cery is the only recourse of the complainant.   The absence of any other method of relief is that which confers the equity jurisdiction.   In this state an attachment at law, which is purely statutory, cannot be maintained where the demand is based on unliquidated damages, but the equity jurisdiction, lying outside of statute and resting upon the general powers of the equity courts to give relief in case of just demands otherwise without value, is the power appealed to in this instance, and the cases cited, as above stated, go to show the existence of that power.

STOCKDALE, J., delivered the opinion of the court.

In November, 1895, Carneal Warfield exhibited his bill of complaint in the chancery court of Washington county, alleging ownership for many years, in himself, of Highland plantation, near Greenville, in said county, having inherited the same from his father.   That on said plantation are two lakes, Rose lake and Cypress lake; that north of and adjoining Highland plantation is Lagrange plantation, owned by Mrs. Susan Richardson Gordon, the southern line of which is on the north side or boundary of Cypress lake.

That the rain water which falls on these plantations, and seepage water from the Mississippi river, when high, go into these lakes, but, until obstructed, the waters from these lakes escaped through a natural water course, through LaGrange plantation, into Cypress brake, and thence away from said plantations, and did no harm to the surrounding lands.   The water course is entirely on the lands of defendant below (appellant here), and is about four hundred yards long.   When these lakes are low that channel becomes dry, but when Cypress lake contains a large quantity of water, a swift current and bold stream flows through said channel.   That during his ownership of Highland plantation, and of all previous ownerships thereof within the memory of man, said lake has been drained by said channel, and the right to Highland plantation to have that

drainage water course was never denied, but always recognized, by the owners of Lagrange plantation.

That in the spring—in April—of 1892, appellant, the owner of Lagrange plantation, wrongfully put a dam across said channel and water course, on her own land entirely, after appellee had planted his crop of corn and cotton, and thereby caused Cypress lake to overflow one hundred and thirty-five acres of appellee's tillable land, disregarding the protest of appellee then and there made, and destroying the crop for that year on said one hundred and thirty-five acres of land.

That said appellant has persistently maintained said dam or levee across said water course ever since, over the protest of appellee, and in disregard of his demands to have the same removed, and by said wrongful act of appellant, appellee has been deprived the use of one hundred and thirty-five acres of his tillable land for four years, worth, in rental value, seven dollars per acre for each year. And that said lands have been damaged by wild growth thereon and filling of ditches, and that he has been damaged $3,750 damages to his lands by the wilful wrongs of appellant.

That appellant (defendant below) is a nonresident of this state; that Lagrange plantation (another plantation of defendant's) is situated in Washington county, Mississippi; that the damages aforesaid and complained of are unliquidated; that an attachment cannot be maintained; that complainant is without remedy to subject said property to the satisfaction of his demand or to get redress for the injury complained of except in a court of chancery.

Publication was prayed to bring in the defendant, as a nonresident, and that, upon a final hearing, the Lagrange plantation and other lands of defendant be subjected to the payment of the damages to be ascertained. He also prays for a writ of injunction ordering the defendant to remove said obstruction from across said waterway, and that the same be removed by order of the court.

An affidavit was filed in the clerk's office, in pursuance of the statute, alleging the nonresidence of the defendant, Susan Richardson Gordon, who resides in the city of New Orleans, in the State of Louisiana, at No. 4109 St. Charles avenue, and that her post office box was 723, in the post office in said city. Upon filing the bill and affidavit, summons issued and publication was made and proved according to law.

On the tenth day of March a decree *pro confesso* was rendered treating defendant as in court and subject to its jurisdiction. Testimony was taken, and, on the twenty-first day of March, 1896, a final decree was rendered upon bill and *pro confesso* and appointing a master to take testimony. On the twenty-fifth day of March, 1896, a decree was rendered confirming the master's report, and that unless defendant pay complainant $2,200 (amount reported) and costs by a day fixed, that the lands described in the bill be sold, etc.

At that stage of the case defendant below appealed the cause to this court.

The question to be determined here is, whether, under the general principles of equity, the decree of the court below should be upheld. The scope of the bill of complaint is to the effect that appellant owns and possesses large landed estates in Washington county, Mississippi, and so uses one of her plantations, by obstructing a natural water course, as to destroy the use of one hundred and thirty-five acres of fine productive lands of an adjoining plantation, and has wrongfully injured and damaged thereby, a citizen of said county to a large amount, and still persists in continuance of such wrong.

There is no question, so far as is shown in this case, that appellee has the right to enjoy his property as nature made it, with its natural outlets and natural water courses open for drainage. There is no question that his rights have been invaded. There is no question but that the law provides a remedy for the protection of his rights, and that any citizen of the state (or of any state, who would come within its borders and

submit to the jurisdiction of its courts) must answer for the invasion of his rights.    And the only and sole defense that appellant deigns to make to demands and protests of appellee, to be protected in the enjoyment of his property, is that she is out of reach of the courts where her property is situated, and whose protection she invokes for the same property which she uses to destroy the neighboring property.

When appellee invokes the aid of the equity courts of the state, to protect him in his right of enjoyment of his property, the appellant who has committed the wrong upon him is startled at the illustration by the chancery court of the progressive and innovating spirit of the age, because, and because only, she is out of reach of the courts of this state.

The learned and elaborate brief of the able counsel for appellant admits there is no remedy at law for such wrongs, and boldly maintains that there is none in equity and should be none anywhere; that to give a remedy in such cases is to disregard established rules of jurisprudence, and to lightly set at naught limitations as to jurisdiction, based on wisdom, vindicated by the centuries and crystallized into precedents innumerable.

The learned counsel for appellee as earnestly maintains that a citizen, suffering under wrongs persistently and wilfully inflicted, ought to have relief, by some means, invoking the maxim, " Wherever a legal right has been infringed, a remedy will be given;" and that the only possible remedy is in the exercise of the equity powers lodged in the chancery court.    The facts, as set forth in the bill in this cause, present a strong appeal for relief, if it can be granted.

The argument of counsel for appellant is directed to the question of jurisdiction, aiming to show that the chancery court is without power to grant relief in the premises.    We think the case of *Dollman* v. *Moore,* 70 Miss., 267, settles that question, and that, upon the state of facts presented by the bill and confessed, the chancery court has full jurisdiction in the premises

to grant such relief as equity may demand upon the final hearing of the cause.

Counsel for appellant make the point that no notice was given, and no attempt was made to give notice, to appellant of the time and place of taking the testimony before the commissioners by whom the damages were established. No appearance was entered for defendant. Section 1750, code 1892, provides for ten days' notice to the opposite party, to take depositions of witnesses in this state. Section 1751: Interrogatories may be filed in the clerk's office for ten days, and the opposite party served with copy, in order to take depositions of witnesses out of the state. Section 1752 provides: "If the opposite party does not reside in the state, or if his residence is unknown, . . . it shall be sufficient to file the notice or interrogatories with the clerk, among the papers in the cause, for the time required."

There seems to be no provision for taking testimony without some sort of notice to the opposite party. No notice was attempted to be given in this case, as stated by counsel; on the contrary, the master says, in his report, that he gave notice to counsel for complainant, but could not give notice to defendant because she was a nonresident, whereas the papers in the case, show that she lived in the city of New Orleans, by an affidavit, giving the number and street of her residence and the number of her post office box, so that there was no excuse for not giving the notice as required and prescribed by the statute. Depositions taken without notice will be rejected (Daniel's Chy. Plead. & Prac., vol. 1, 951), and notice cannot be supplied by the commissioners' adjournment to a day fixed. *Ib.* Notice to nonresident by filing in clerk's office (George's Digest, 187), applies to all the courts in the state. Want of notice of time and place cause suppression of depositions. *Daily* v. *Johnson,* 48 Miss., 246.

In *Ellis* v. *Jusynsky,* 5 Cal., 444, the court says: "The order to take testimony of Scranton should have specified the notice to be given to the adverse party. A deposition taken

upon an order without such notice, where the opposite party has not had reasonable notice, ought not to be read in evidence."

In *Garnet* v. *Yoe*, 17 Ala., 78, the same rule is laid down. 5 Am. & Eng. Enc. L., 592.

The authorities seem abundant and conclusive that depositions taken without notice to the opposite party cannot be read in evidence as a general rule. That no motion was made in the court below to suppress them cannot figure in this case, as the master was appointed on March 21, 1896, and he took depositions without notice on March 23, 1896, and a decree confirming and adopting the report was rendered on March 25, 1896. It follows, therefore, that the depositions in this case, so taken, ought not to have been considered in the court below, and that nothing based upon them can be sustained. There is no other testimony in the record.

The judgment of the court below is affirmed in rendering the decree *pro confesso* in the cause, and that decree is sustained, and the judgment is reversed as to the final decree, and decree confirming the master's report, decree ordering the payment by defendant of money to complainant, and ordering the sale of lands, and all of said decrees and all proceedings after the decree of *pro confesso* are set aside and vacated and the cause

*Remanded.*